**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
ANA WARRICK                  :    Civ. No. 3:19CV00674(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION[1]            :    May 19, 2020
                             :
-----------------------------x
```

**RULING ON CROSS MOTIONS**

Plaintiff Ana Warrick ("plaintiff") brings this appeal under §205 of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI"). Plaintiff has moved to reverse the Commissioner's decision, or in the alternative to remand for a new hearing. [Doc. #15]. Defendant has filed a motion to affirm the decision of the Commissioner. [Doc. #17].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #15]** is

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. He is now the proper defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

**DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #17]** is **GRANTED**.

I.  <u>PROCEDURAL HISTORY</u>[2]

Plaintiff filed an application for SSI on December 17, 2015, alleging disability beginning on December 1, 2014. <u>See</u> Certified Transcript of the Administrative Record, Doc. #7, compiled on June 18, 2019, (hereinafter "Tr.") at 151-59. Plaintiff's application was denied initially on July 28, 2016, <u>see</u> Tr. 90-94, and upon reconsideration on October 25, 2016. <u>See</u> Tr. 98-101.

Plaintiff, initially self-represented, appeared for a hearing before Administrative Law Judge ("ALJ") Jason Mastrangelo via video conference on January 24, 2018. <u>See</u> Tr. 55-64. That hearing, however, was continued to afford plaintiff an opportunity to obtain counsel. <u>See</u> Tr. 59-63. On May 31, 2018, plaintiff, represented by her current attorney, Olia Yelner,[3] appeared and testified at a hearing via video conference

---

[2] Simultaneously with her motion, plaintiff filed "Plaintiff's Medical Chronology[,]" which the Court accepts as a Statement of Material Facts. [Doc. #15-2]. Defendant has filed a Responsive Statement of Facts, agreeing with the majority of the facts set forth in plaintiff's Medical Chronology. [Doc. #23].

[3] The transcript of the May 31, 2018, administrative hearing identifies plaintiff's counsel as "Ulhi Ulner[.]" Tr. 26. However, the administrative record contains an appointment of representative form signed by plaintiff on March 21, 2018, which identifies "Olia M. Yelner" as plaintiff's counsel. <u>See</u> Tr. 146. The administrative record also contains a fee agreement dated

2

before ALJ Mastrangelo. See generally Tr. 26-54. Vocational
Expert ("VE") Ruth Baruch appeared and testified at the
administrative hearing by telephone. See Tr. 49-54. On June 18,
2018, the ALJ issued an unfavorable decision. See Tr. 8-25. On
March 8, 2019, the Appeals Council denied plaintiff's request
for review of the ALJ's decision, thereby making the ALJ's June
18, 2018, decision the final decision of the Commissioner. See
Tr. 1-5. The case is now ripe for review under 42 U.S.C.
§405(g).

## II.  STANDARD OF REVIEW

The review of a Social Security disability determination
involves two levels of inquiry. First, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. Second, the Court must decide whether
the determination is supported by substantial evidence. See
Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Substantial
evidence is evidence that a reasonable mind would accept as
adequate to support a conclusion; it is more than a "mere
scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229
(1938)). The reviewing court's responsibility is to ensure that

---

March 21, 2018, reflecting a fee agreement between plaintiff and
Attorney Olia M. Yelner of Pirro & Church, LLC. See Tr. 147.

a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject

4

the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the**

**ALJ's decision**." **Bonet ex rel. T.B. v. Colvin**, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV01723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV04524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity "RFC" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV. **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since ... the date the application was filed[.]" Tr. 19. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. See Tr. 13. At step two, the ALJ found that plaintiff had the following severe impairments: "liver fibrosis/cirrhosis with non-alcoholic steatohepatitis and Type II diabetes mellitus with enthesopathy of the extremities[.]" Id. At step two, the ALJ determined that plaintiff's

> gastroesophageal reflux disease/irritable bowel syndrome/colitis/constipation, chronic obstructive pulmonary disease, psoriasis/eczema, plantar fasciitis,

9

> hirsutism and borderline obesity (BMI's below 30) do not
> cause any significant secondary functional limitations
> (See: Exhibit 1F, 2F, 4F, 9F, 13F, 16F, 18F, 20F, 21F,
> 22F and 27F). There is no indication that the claimant's
> right shoulder "sprain", with basically negative
> examinations, cause any significant restrictions (See:
> Exhibits 20F and 22F). The claimant's mildly elevated
> hypertension with hyperlipidemia has not caused any end-
> organ damage (See: Exhibits 2F, 5F and 22F). She only
> has a history of migraine headaches, carpal tunnel
> syndrome (status/post release surgery)and Bell's palsy
> do not result in any continuing significant secondary
> limitations (See: Exhibits 5F, 7F and 22F). The
> claimant's status/post right ankle fracture/tendon tear,
> bronchitis, toe nail fungal infection and dental abscess
> were acute conditions which resolved in relatively short
> periods of time (See: Exhibits 2F, 18F and 20F).
> Consequently, the undersigned holds that all these other
> physical disorders are not considered "severe"
> impairments.

Tr. 13-14 (sic) (footnote omitted).

The ALJ also considered plaintiff's mental health

conditions, concluding:

> The claimant's medically determinable mental impairments
> of a major depressive disorder, generalized anxiety
> disorder and history of substance addiction disorder,
> considered singly and in combination, do not cause more
> than minimal limitation in the claimant's ability to
> perform basic mental work activities and are therefore
> nonsevere.

Tr. 14 (sic).

At step three, the ALJ determined that plaintiff's

impairments, either alone or in combination, did not meet or

medically equal the severity of any of the listed impairments in

20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 15. The ALJ

specifically considered whether plaintiff's liver disease met or

medically equaled Section 5.05. See Tr. 15. The ALJ also considered whether the effects of plaintiff's diabetes mellitus met or medically equaled any "other body systems" listing under Section 9.00, or the peripheral neuropathy listing under Section 11.14. See id.

The ALJ next found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) in that she can lift and carry 20 pounds occasionally and 10 pounds frequently and can sit, stand, and walk 6 hours each in an 8-hour work day except for up to frequent stooping, balancing, kneeling, crouching, crawling and climbing ramps/stairs with only up to occasional climbing of ropes/ladders/scaffolds.

Tr. 16.

At step four, the ALJ concluded that plaintiff had no past relevant work. See Tr. 18. At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Id.

## V.   **DISCUSSION**

Plaintiff timely filed this action for review and moves to reverse the decision of the Commissioner, or in the alternative, to remand for a new hearing. [Doc. #15]. The Court construes plaintiff's briefing as asserting the following arguments:

> 1. The ALJ erred by assigning little weight to plaintiff's GAF score of 48, see Doc. #15-1 at 8-9;

2. The ALJ erred in his RFC determination, including the weight he assigned to the opinion evidence, see id. at 9-12, 13-18; and

3. The ALJ failed to develop the record. See id. at 12-13.

For the reasons stated below, the Court rejects each of plaintiff's arguments, and affirms the decision of the Commissioner.

A.   The Evaluation of Plaintiff's GAF Score

The ALJ assigned little weight to plaintiff's GAF score of 48, concluding that it showed "just a short term exacerbation in symptoms potentially caused by her substance dependence which improved in a short period of time." Tr. 15. Plaintiff takes issue with this rationale, contending that "there is not an iota of evidence in the record indicating recent substance abuse, or a relapse[.]" Doc. #15-1 at 8. Plaintiff also asserts that by discounting the GAF score, the ALJ improperly substituted his opinion for that of plaintiff's "treating and examining doctors[.]" Id. at 9.[4] Defendant responds that "it is not actually clear who assessed a GAF score of 48," and "the

_____

[4] As discussed below, it is unclear who assessed plaintiff with the GAF score at issue. The score is mentioned in only two treatment notes, with no explanation, and is not included as part of a formal medical opinion. Accordingly, the Court treats this argument as taking issue with the weight assigned to the GAF score itself, versus the weight assigned to a particular physician's opinion.

Commissioner has never treated GAF scores as dispositive." Doc. #17-1 at 8.

"GAF rates overall psychological functioning on a scale of 0-100 that takes into account psychological, social, and occupational functioning." Zabala v. Astrue, 595 F.3d 402, 405 n.1 (2d Cir. 2010). "A GAF in the range of 41 to 50 indicates '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" Id. at 406 n.2 (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), at 34 (4th ed. Rev. 2000)). However, the DSM-V, issued in 2013, "no longer uses GAF scores as a diagnostic tool for assessing a patient's functioning because of the questionable probative value of such scores." Hagan v. Colvin, 52 F. Supp. 3d 167, 169 n.1 (D. Mass. 2014).

Since the DSM-V was issued, "[t]he Social Security Administration has explained that '[u]nless [a] clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.'" Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (first alteration added) (quoting U.S. Soc. Sec. Admin., Office of Disability Programs, AM-13066,

Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (Oct. 14, 2014) (hereinafter "AM-13066")). Accordingly, the Social Security Administration has concluded, "'[u]nless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to little weight under our rules.'" Id. (quoting AM-13066).

The ALJ did not discount the GAF score solely because he believed that plaintiff had suffered a relapse. Rather, the ALJ opined that the GAF score was "potentially caused by [plaintiff's] substance dependence[,]" and in any event it represented a mere "short term exacerbation in symptoms ... which improved in a short period of time[.]" Tr. 15. In other words, the ALJ determined that the GAF score did not represent a "reliable longitudinal picture of the claimant's mental functioning[.]" Estrella, 925 F.3d at 97 (citation and quotation marks omitted). Because the record reflects only a single GAF score, the Court finds no error in that assessment.

The Court concludes that the ALJ properly afforded little weight to plaintiff's GAF score. The transcript contains two medical records that reference a March 30, 2016, GAF score of 48. See Tr. 382, Tr. 394. However, the only medical record in the transcript from March 30, 2016, reflects an "Office Visit" plaintiff made to Southwest Community Health Center ("SWCHC") to refill her diabetes medication, and to address other physical

14

conditions. See Tr. 418-23. There are no medical records in the administrative transcript explaining the GAF score purportedly assessed on March 30, 2016. Accordingly, it is not clear who assessed plaintiff with the GAF score, the period to which that score applied, or any of the information purportedly underlying the assessment. Such information would have been required for the ALJ to have given the score any more than little weight. See Estrella, 925 F.3d at 97.

Accordingly, the ALJ did not err by assigning little weight to plaintiff's GAF score.

B.   The RFC Determination

The Court next considers plaintiff's several arguments related to the RFC determination. The ALJ found that plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) in
> that she can lift and carry 20 pounds occasionally and
> 10 pounds frequently and can sit, stand, and walk 6 hours
> each in an 8-hour work day except for up to frequent
> stooping, balancing, kneeling, crouching, crawling and
> climbing ramps/stairs with only up to occasional
> climbing of ropes/ladders/scaffolds.

Tr. 16. Plaintiff presents three arguments regarding the RFC determination, two concerning the ALJ's weighing of the opinion evidence, and one concerning the RFC determination itself. See Doc. #15-1 at 9-18. The Court addresses each of these arguments in turn.

15

    *1.  Applicable Law*

The Social Security Regulations define the RFC as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §416.945(a)(1). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence[.]" Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 2996); accord Cobb v. Astrue, 613 F. Supp. 2d 253, 258 (D. Conn. 2009); Dziamalek v. Saul, No. 3:18CV287(SRU), 2019 WL 4144718, at *17 (D. Conn. Sept. 3, 2019).

The RFC determination necessarily involves the ALJ's evaluation of opinions given by medical professionals, including physicians who have treated a claimant.

> "The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §416.927(c). If the opinion, however, is not "well-supported by medically acceptable clinical and laboratory

diagnostic techniques[,]" then the opinion cannot be entitled to controlling weight. 20 C.F.R. §416.927(c)(2).

When weighing any medical opinion, from a treating physician or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §§416.927(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4 (S.S.A. Aug. 9, 2006). The Second Circuit does not, however, require a "slavish recitation of each and every factor [of 20 C.F.R. §416.927(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

2. *Rao Opinion*

On April 6, 2018, Dr. Rao completed a six-page medical source statement (hereinafter the "Rao Opinion"). See Tr. 830-36. In pertinent part, the Rao Opinion states that plaintiff: cannot lift or carry any weight, see Tr. 831; cannot sit, stand, or walk for more than 10 minutes at a time, see Tr. 832; requires a cane to ambulate and can only ambulate "1 block[,]"

17

id.; can never use her right hand to reach, handle, finger, feel, push, or pull, see Tr. 833; and can never balance, stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, or scaffolds, see Tr. 833-34. All of this information is provided on a standard form consisting of various checkboxes. See generally Tr. 830-36. Of the several queries on the form calling for a narrative explanation, Dr. Rao answered just one: "Identify the particular medical or clinical findings ... which support your assessment or any limitations and why the findings support the assessment." Tr. 835. Dr. Rao answered: "Patient has cirrhosis of liver[,] Psoriatic Arthritis[,] Depression[,] COPD[,] DM II[,] on Methadone for Pain[,] Frozen Shoulder[.]" Id.

The ALJ acknowledged that Dr. Rao was plaintiff's "[t]reating primary care physician[,]" Tr. 17, but assigned the Rao Opinion little weight because it

> essentially restricts the claimant to being bedridden since it is clearly over restrictive given her largely negative physical examination findings as contained in the treating progress notes (See: Exhibit 21F). Generally, we give more weight to opinions of treating sources, even "controlling weight," if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence (20 CFR 416.927(d)2). The Commissioner is responsible for making the determination about whether you meet the statutory definition of "disability" and a statement by a medical source that you are "disabled" or "unable to work" does not mean that we will find that you are disabled (20 CFR 416.927d/e).

Tr. 18 (sic). Plaintiff contends that by assigning little weight to the Rao Opinion, the ALJ improperly substituted his own opinion for that of Dr. Rao. See Doc. #15-1 at 9. Defendant responds that the ALJ was entitled to discredit the Rao Opinion because it is not consistent with other substantial evidence in the record. See Doc. #17-1 at 12.

At the outset, it bears noting that a form comprised primarily of checkboxes, such as the Rao Opinion, "is only marginally useful for purposes of creating a meaningful and reviewable factual record." Halloran, 362 F.3d at 31 n.2. The Rao Opinion consists almost entirely of checkboxes. See Tr. 830-36. Further, the single narrative response Dr. Rao provided is of limited utility, listing only plaintiff's medical diagnoses. See Tr. 835. "The better an explanation a source provides for a medical opinion, the more weight [the Commissioner] will give that medical opinion." 20 C.F.R. §416.927(c)(3). Here, Dr. Rao did not provide a substantive explanation for any of the functional limitations assessed, therefore limiting the utility of his opinion.

Nevertheless, the ALJ acknowledged that the opinion of a treating physician is to be given controlling weight unless the opinion is inconsistent with other substantial evidence. See Tr. 18. Here, the record contains substantial evidence that is

inconsistent with the Rao Opinion. See Gonzalez v. Berryhill, No. 3:17CV01385(SALM), 2018 WL 3956495, at *10 (D. Conn. Aug. 17, 2018) (An ALJ may assign less than controlling weight to a treating physician's opinion where that opinion "is contradicted by 'other substantial evidence in the record.'" (quoting Wavercak v. Astrue, 420 F. App'x 91, 93 (2d Cir. 2011))).

As an initial matter, the Rao Opinion is internally inconsistent. Although Dr. Rao concluded plaintiff was unable to balance, sit, stand, or walk for more than ten minutes, and unable to climb ramps or stairs, Dr. Rao also concluded that plaintiff can travel without a companion, can walk on rough or uneven surfaces, and can climb a few steps without a handrail. See Tr. 830-36. Common sense dictates that these findings are not reconcilable.

Second, the Rao Opinion is inconsistent with the majority of Dr. Rao's treatment notes. The Rao Opinion is extremely restrictive and, as found by the ALJ, "essentially restricts the [plaintiff] to being bedridden." Tr. 18. Dr. Rao's limited treatment notes do not support such severe limitations.[5] For

---

[5] Although the ALJ did not specifically address plaintiff's treatment history with Dr. Rao, plaintiff saw Dr. Rao just five times between June, 2016, and April, 2018. See Tr. 431-37, Tr. 787-88, Tr. 805-07, Tr. 807-08, and Tr. 851-62. "Generally, the longer a treating source has treated [a claimant] and the more times [a claimant] ha[s] been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. §416.927(c)(2)(i); see also Gonzalez, 2018 WL 3956495, at

example, on June 10, 2016, Dr. Rao conducted a physical examination of plaintiff, which revealed "normal" results across all systems, including plaintiff's cardiovascular, musculoskeletal, and respiratory systems. Tr. 434-35. On this same date, Dr. Rao encouraged plaintiff to exercise and noted that plaintiff reported her pain as "0/10." Tr. 435. Plaintiff next saw Dr. Rao on October 24, 2017, for abdominal pain. See Tr. 787-88. A physical examination of plaintiff on this date was also largely normal. See Tr. 788. Plaintiff next saw Dr. Rao on January 16, 2018, with complaints of shortness of breath. See Tr. 805-07. Plaintiff again had a normal examination. See Tr. 806. Plaintiff then saw Dr. Rao on February 27, 2018, for a right shoulder injury. See Tr. 807-08. Dr. Rao diagnosed plaintiff with a shoulder strain and noted that plaintiff's right shoulder was tender to the touch and had decreased range of motion. See Tr. 808. On that same date, however, Dr. Rao noted that "[t]he rest of the arm and elbow and hand appear normal and do not have any problems." Id. Plaintiff last saw Dr. Rao on April 6, 2018, for an evaluation of her diabetes and hypertension. See Tr. 851-62. Although on this date plaintiff presented with musculoskeletal issues on examination, including an abnormal gait requiring the use of crutches, Dr. Rao

---

*8. This also supports the conclusion that the ALJ properly discounted the Rao Opinion.

nevertheless encouraged plaintiff to exercise. See Tr. 856-57; see also Tr. 858 ("Patient advised to increase exercise activity."). Plaintiff also reported her pain as "0/10" on this date. Tr. 859.

Third, the Rao Opinion is inconsistent with other substantial evidence of record. For example, Dr. Gross, the surgeon who performed a carpal tunnel release on plaintiff's right hand on November 4, 2016, noted that plaintiff's "[g]ait and station" were normal, Tr. 516, and her "right digital sensory symptoms ... resolved postoperatively." Tr. 514. In May 2017, although plaintiff presented with painful range of motion in her right ankle and an antalgic gait, she did not require any assistive devices, or physical assistance, to walk. See Tr. 554, Tr. 564. On July 6, 2017, plaintiff demonstrated normal range of motion during a musculoskeletal exam, despite complaints of joint pain. See Tr. 680. In September 2017, plaintiff "was seen and evaluated for MRI findings of the right ankle." Tr. 572. Aside from a partial split tear of her "PB tendon," the MRI generally revealed mild findings. See Tr. 573 ("Mild/early degenerative arthritis. No acute osseous abnormality. No discrete acute major ligamentous injury appreciated."). It was again noted in September 2017 that plaintiff did not require an assistive device, or physical assistance, to walk. See Tr. 581.

These findings do not support the severe limitations set forth in the Rao Opinion.

A February 27, 2018, x-ray of plaintiff's right shoulder showed "[n]o acute abnormality[,]" and "a stable small calcification ... which may reflect calcific tendonitis." Tr. 828. This objective evidence does not support the conclusion that plaintiff can never lift or carry any weight. See Tr. 831. Finally, on March 16, 2018, less than one month before Dr. Rao authored his opinion, plaintiff complained of numbness and tingling in her lower extremities, but nevertheless had a normal physical examination. See Tr. 809-10.

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. §416.927(c)(4). Accordingly, an ALJ properly discounts a treating physician's opinion where it is contradicted by "other substantial evidence in the record." Wavercak, 420 F. App'x at 93 (citation and quotation marks omitted). Here, the Rao Opinion is not only internally inconsistent,[6] but is also inconsistent with his own treatment

_____

[6] In discussing the Rao Opinion, the ALJ did not explicitly discuss each of the factors set forth in 20 C.F.R. §416.927(c)(2)-(6). However, because the ALJ was not required to do so, there is no error. See Atwater, 512 F. App'x at 70; Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) ("[R]emand is not required where 'the evidence of record permits us to glean the rationale of an ALJ's decision[.]'" (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983))).

notes and other substantial evidence of record. Indeed, the Rao Opinion is an outlier in a sea of unremarkable findings. Accordingly, the ALJ did not err by assigning little weight to the Rao Opinion.

> 3.   *The Weight Assigned to the Opinions of the State Agency Consultants*

The record contains four opinions from non-examining state agency consultants: the July 6, 2016, opinion of Dr. Katrin Carlson, PsyD, see Tr. 71-72; the July 28, 2016, opinion of Dr. Khurshid Khan, MD, see Tr. 73-74; the October 21, 2016, opinion of Dr. Nisha Singh, MD, see Tr. 86-87; and the October 25, 2016, opinion of Dr. Warren Leib, PhD, see Tr. 84-85. The record also contains two opinions from examining state agency consultants: the June 25, 2016, opinion of Dr. Brett Rayford, PsyD, see Tr. 405-09; and the July 7, 2016, opinion of Dr. Richard Slutsky, MD, see Tr. 410-14.

The ALJ noted the opinions of the four non-examining consultants, stating:

> The State Agency consultants recorded between July and October 2016 that the claimant's "severe" liver disease and diabetes mellitus caused a residual functional capacity for exertionally light work with frequent stooping, balancing, kneeling, crouching, crawling and climbing ramps/stairs with up to occasional climbing of ropes/ladders/scaffolds (See: Exhibits 2A and 4A).

Tr. 17-18. The ALJ assigned substantial weight to these opinions. See Tr. 18. As to the opinions of the examining state agency

consultants, the ALJ acknowledged only one during the course of his RFC analysis,[7] stating:

> A consultative medical examination administered by Richard Slutsky MD in July 2016 recorded that the claimant alleged bilateral hand/wrist numbness/tingling/weakness radiating up to the forearms accompanied by numbness/tingling/burning in the right foot/ankle up to the knee as well as persistent tiredness; with a largely "normal ... intact" examination aside from mild weakness and sensory deficit in the hands; due to a diagnosis of diabetes mellitus with a question of diabetic neuropathy (or carpal tunnel syndrome) while indicating that she did not know her last hemoglobin A1C level raising a question of being "sub-optimally controlled" during that time (Exhibit 7F).

Tr. 17 (sic). The ALJ did not indicate what weight, if any, he assigned to this opinion. See Tr. 16-18.[8]

Plaintiff contends that the ALJ erred by crediting the opinions of the state agency consultants over the Rao Opinion. See Doc. #15-1 at 9-10. Defendant responds that "it is well established that the applicable regulations permit the opinions of non-examining sources to override treating sources' opinions, provided they are supported by evidence in the record." Doc. #17-1 at 14 (citation and quotation marks omitted).

---

[7] The ALJ discussed the opinion of Dr. Brett Rayford during his step two analysis of plaintiff's mental impairments. See Tr. 14.

[8] Plaintiff does not challenge the ALJ's apparent failure to explain what weight, if any, he assigned to the opinion of Dr. Slutsky. Accordingly, the Court does not consider whether it should assign any significance to that apparent failure.

The Regulations referred to by defendant "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record." Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citation omitted). Accordingly, while "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion[,]" he can "choose between properly submitted medical opinions[.]" Balsamo, 142 F.3d at 81. Thus, the mere fact that the ALJ credited the opinions of the state agency consultants over that of Dr. Rao does not, on its own, necessarily constitute error. Rather, the question is whether the opinions of the state agency consultants are supported by substantial evidence.

Plaintiff does not claim that the opinions of the state agency consultants were incorrect at the time they were made. Instead, plaintiff asserts that the opinions of the state agency consultants became stale by the time the ALJ relied upon them to find plaintiff's RFC, because the state agency consultants did not review any of the medical evidence post-dating October 21, 2016. See Doc. #15-1 at 10.

Defendant responds that the ALJ explicitly acknowledged the state agency consultants "did not have the opportunity to consider the entire record, and then concluded that the most recent medical evidence showed no change in [p]laintiff's daily

functioning that would render the opinions stale." Doc. #17-1 at
16. The Court agrees with defendant.

A medical opinion from a nonexamining source may become
stale when it is contradicted by subsequent medical evidence.
See, e.g., Hidalgo v. Bowen, 822 F.2d 294, 295-96 (2d Cir.
1987). However, there is no "unqualified rule that a medical
opinion is superseded by additional material in the record[.]"
Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016).
Rather, for a medical opinion to become stale, and an ALJ to err
by relying upon it, the subsequent medical evidence must "raise
doubts as to the reliability of" the opinion. Id.

Plaintiff cites to several pieces of evidence which she
contends undermine the state agency consultants' opinions. See
Doc. #15-1 at 10-12. However, there is other substantial
evidence post-dating the state agency consultants' opinions,
including that previously discussed in connection with the Rao
opinion, which supports the state agency consultants'
conclusions. See Section V.B.2., supra; see also Tr. 541-46, Tr.
642-45, Tr. 660-62, Tr. 789-93, Tr. 795-805, Tr. 809-12.
Accordingly, the ALJ did not err by assigning substantial weight
to the opinions of the state agency consultants.

### 4. Failure to Include Limitations in RFC Determination

Plaintiff contends that the ALJ erred by failing to include
certain limitations in the RFC determination. See Doc. #15-1 at

14-18. Specifically, plaintiff asserts that the ALJ should have: (1) limited plaintiff to unskilled, simple work, with few workplace changes, and no production pace; (2) limited plaintiff to occasional use of her right hand; and (3) provided for an additional exertional limitation given plaintiff's "inability to stand for long periods of time, and the inability to lift[.]" Id. at 16. Defendant responds that substantial evidence supports the ALJ's RFC determination, including the opinions of the state agency consultants and plaintiff's medical records. See Doc. #17-1 at 17-20.

In support of her argument, plaintiff cites to certain evidence in the record upon which the ALJ could have relied to include additional limitations in the RFC determination. See Doc. #15-1 at 10-12. However, once the ALJ finds a particular set of facts, the Court "can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" Brault v. Soc. Sec. Admin., Com'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)); accord Johnson v. Berryhill, No. 3:16CV01050(SRU), 2017 WL 2381272, at *6 (D. Conn. Jun. 1, 2017). Given the other evidence of record, plaintiff's proffer of evidence does not support a finding that a reasonable factfinder would have concluded differently from the ALJ here. See Brault, 683 F.3d at 448.

Indeed, plaintiff offers no substantive analysis in that regard.[9]
The question before the Court is not "whether there is
substantial evidence supporting the appellant's view[,]" but
"whether substantial evidence supports <u>the ALJ's decision</u>."
<u>Bonet</u>, 523 F. App'x at 59 (2d Cir. 2013). Here, for reasons
previously stated, the ALJ's findings <u>are</u> supported by
substantial evidence and there is no reversible error. <u>See</u>
<u>Rivera v. Berryhill</u>, No. 3:18CV143(AWT), 2019 WL 1292490, at *8
(D. Conn. Mar. 21, 2019) ("[W]here substantial evidence also
supports the ALJ's determination, that determination must be
affirmed.").[10]

    C.   <u>Failure to Develop the Record</u>

    Finally, plaintiff appears to suggest that the ALJ failed
to develop the record:

> Because the ALJ relied solely on the opinions of doctors
> who did not review the vast majority of Ms. Warrick's
> record, the ALJ had no real opinion evidence with which
> to formulate his [RFC]. Treatment notes presently in the
> record are not sufficient to formulate a complete RFC.
> ... Where there is such an absence of supporting medical
> opinion, the ALJ has an affirmative duty to request RFC
> assessments from a plaintiff's treating sources.

---

[9] Additionally, many of the records relied on by plaintiff
reflect her self-reports and not clinical findings or diagnoses.
<u>See</u> Doc. #15-1 at 10-12.

[10] With respect to the contention that a non-exertional
limitation should have been included in the RFC, substantial
evidence supports the ALJ's decision not to include such a
limitation. <u>See, e.g.</u>, Tr. 402, Tr. 403, Tr. 407, Tr. 510, Tr.
847, Tr. 856.

Doc. #15-1 at 12 (citation and quotation marks omitted). For reasons previously stated, the ALJ properly relied on the opinions of the state agency consultants and the treatment notes from plaintiff's treating physicians. See Section V.B.3., supra. Accordingly, the ALJ was not required to request additional RFC assessments from plaintiff's treating sources. See, e.g., Rivera v. Berryhill, No. 3:16CV01842(JAM), 2018 WL 1521824, at *4 (D. Conn. Mar. 28, 2018) ("[T]he Second Circuit has concluded that an ALJ was not under an obligation to further develop the record where the record contained a partially relied-upon opinion from a consultative examiner and the treatment notes from the plaintiff's doctors."). Additionally, plaintiff has failed to demonstrate how additional medical opinions would undermine the ALJ's decision. See Lena v. Astrue, No. 3:10CV893(SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) ("To demonstrate prejudice [plaintiff] must show that the additional medical reports would undermine the ALJ's decision." (citation and quotation marks omitted)). Therefore, the ALJ did not err by failing to request additional opinions from plaintiff's treating sources.

## VI.  CONCLUSION

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #15]** is

**DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #17]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 19th day of May, 2020.

```
                      /s/
         _____
         HON. SARAH A. L. MERRIAM
         UNITED STATES MAGISTRATE JUDGE
```